## AMELL et al. v. UNITED STATES.

No. 282.   Argued January 24, 1966.—Decided May 16, 1966.

*David Scribner* argued the cause for petitioners.   With him on the brief were *Lee Pressman* and *Joan Stern Kiok.*

*John C. Eldridge* argued the cause for the United States.   With him on the brief were *Solicitor General Marshall, Assistant Attorney General Douglas* and *Alan S. Rosenthal.*

Briefs of *amici curiae,* urging reversal, were filed by *Howard Schulman* for the Maritime Trades Department of the AFL–CIO, and by *Abraham E. Freedman* for the National Maritime Union of America, AFL–CIO.

MR. CHIEF JUSTICE WARREN delivered the opinion of the Court.

The case before us presents interesting problems of a jurisdictional nature. The Suits in Admiralty Act [1] vests exclusive jurisdiction in the district courts when the suit is of a maritime nature. Under the Tucker Act,[2] the Court of Claims has jurisdiction over contractual claims against the United States. This jurisdictional interaction presents itself here.

The petitioners are employees of various federal executive departments working aboard government vessels. They filed contractual actions in the Court of Claims, alleging they were entitled to back pay increases and overtime pay for their labors, invoking various federal pay statutes and regulations. In all these suits, the petitioners predicated jurisdiction on the Tucker Act, which has a generous six-year limitations period and provides a grace period as well, 28 U. S. C. § 2501 (1964 ed.). Their employer, the United States, filed motions to have the actions transferred to various federal district courts on the ground that the claims were of a maritime nature and justiciable exclusively under the Suits in Admiralty Act. This Act provides only two years for claimants to file suit, and also requires exhaustion of administrative remedies, 46 U. S. C. § 745 (1964 ed.). The Court of Claims granted the motions without opinion, simply citing to three unreported cases in which it had made similar dispositions. To uphold this transfer would bar those claims which accrued more than two years prior to the time the actions were filed. We granted certiorari, 382 U. S. 810, and reverse.

On its face, the Tucker Act permits all individuals with contractual claims against the Government to sue in the Court of Claims. The Suits in Admiralty Act similarly

---

[1] 41 Stat. 525, as amended, 46 U. S. C. §§ 741-752 (1964 ed.).
[2] 24 Stat. 505, as amended, 28 U. S. C. §§ 1346, 1491 (1964 ed.).

affords an open berth in the district courts, provided the claims are of a maritime nature. The question is which Act should be applicable to the claims brought here, and this in turn depends on whether these seafaring petitioners are more appropriately classified as federal workers or as mere seamen.

The Government takes the position that these employees are to be deprived of the liberal benefits of the longer limitations period available to all other government employees under the Tucker Act. This is so, the Government reasons, because for purposes of wage claims the petitioners' status as seamen overrides their acknowledged role as federal workers. In assuming this posture, the Government seeks the best of both worlds. Congress is depicted as ambivalent in treating these petitioners either as seamen or as federal employees depending on which status may redound more to the benefit of the Government's proprietary interest.

The Government acknowledges that the petitioners are governed by a patchwork pattern of federal statutes which encompass many facets of their economic welfare. With regard to so-called fringe benefits, pervasive government schemes provide for sick leave and vacation pay,[3] and for death, health, medical and pension programs.[4] The petitioners' potential recovery for personal injuries is limited strictly by a workmen's compensation statute governing them as federal workers to the exclusion of both the Public Vessels Act,[5] *Johansen* v. *United States,*

---

[3] Annual and Sick Leave Act of 1951, 65 Stat. 679, as amended, 5 U. S. C. §§ 2061–2066 (1964 ed.).

[4] Federal Employees' Group Life Insurance Act of 1954, 68 Stat. 736, as amended, 5 U. S. C. §§ 2091–2103 (1964 ed.); Civil Service Retirement Act, 70 Stat. 743, as amended, 5 U. S. C. §§ 2251–2267 (1964 ed.); Federal Employees Health Benefits Act of 1959, 73 Stat. 708, 5 U. S. C. §§ 3001–3014 (1964 ed.).

[5] 43 Stat. 1112, as amended, 46 U. S. C. §§ 781–790 (1964 ed.).

343 U. S. 427, and the Suits in Admiralty Act, *Patterson v. United States*, 359 U. S. 495. By virtue of their governmental employment, the petitioners' right to join unions and to select bargaining representatives, unlike that of private seamen, exists only by express leave of the President, Exec. Order No. 10988, 27 Fed. Reg. 551 (1962), and they are forbidden, under pain of discharge, fine and imprisonment, from exercising or asserting the right to strike, 69 Stat. 624, 5 U. S. C. §§ 118p–118r (1964 ed.).

When it comes to wage claims the Government treats the petitioners, to their detriment, as seamen. The workers, however, have their wages fixed by federal statutes and regulations, like other federal employees. It is true that their rates of pay are geared to the prevailing wage scale in private shipping operations,[6] but this factor diminishes upon analysis. A host of federal workers, like these seamen, have their rates of pay so adjusted.[7] The petitioners, then, are essentially no dif-

---

[6] Section 202 (8) of the Classification Act of 1949, 63 Stat. 954, as amended, 5 U. S. C. § 1082 (8) (1964 ed.), provides in substance that workers on vessels shall have their compensation fixed and adjusted by .federal agencies so far as consistent with the public interest in accordance with prevailing rates and practices in the maritime industry.

[7] In 1962, Congress enacted the Federal Salary Reform Act, making an explicit declaration of policy that federal salary fixing should be comparable to private enterprise salary rates for the same levels of work, Act of Oct. 11, 1962, Pub. L. 87–793, 76 Stat. 841, 5 U. S. C. §§ 1171–1174 (1964 ed.). Pursuant to congressional direction, the President issued an Executive Order, Exec. Order No. 11173, Aug. 20, 1964, 29 Fed. Reg. 11999, taking full cognizance of the congressional policy enunciated in the Federal Salary Reform Act of 1962. So far as determining the compensation for wage board employees, as are these petitioners, Congress has evinced a similar concern, Pub. L. 85–872, 72 Stat. 1696, 5 U. S. C. §§ 1181–1184 (1964 ed.). Thus, the whole trend in government compensation is to draw individuals into public service by providing salaries at least comparable to those they would earn on entering private industry.

ferent from the civil servants who deliver the mail, fight forest fires, construct public buildings, or who engage in countless other tasks which affect virtually every phase of the country's well-being. The wage scale of government-employed seamen is fixed by federal agencies; it is not automatically adjusted to the rate of pay prevalent in private industry, and in some cases the private pay rates are not easily ascertained. Further, these government employees—unlike normal seamen—benefit from wage pay increases won in the private industry only prospectively and to a limited degree. Often in the maritime industry, private contract negotiations continue beyond the terminal date set in a collective bargaining agreement. When the agreement is signed, however, it generally provides that the private seamen receive the increased pay retroactively. The government seamen receive pay increases only from the actual date agreement is reached in the private sector. Therefore, the back pay claims are more appropriately catalogued on the government side of the ledger, although they may have a salty tang.

This inference as to congressional intent is reinforced in considering the claims for overtime pay. Here there is a specific provision—Section 205 of the Federal Employees Pay Act of 1945 [8]—which fixes the ratio of overtime pay to the employees' basic pay. Congress has thus

---

[8] 59 Stat. 295, 5 U. S. C. § 913 (1964 ed.), provides:

"Employees whose basic rate of compensation is fixed on an annual or monthly basis and adjusted from time to time in accordance with prevailing rates by wage boards or similar administrative authority serving the same purpose shall be entitled to overtime pay in accordance with the provisions of section 673c of this title. The rate of compensation for each hour of overtime employment of any such employee shall be computed as follows: . . . ."

This provision, as does 5 U. S. C. § 673c (1964 ed.), gives government-employed seamen one and one-half times their basic pay for overtime pay.

explicitly prescribed that overtime pay should be fixed in a uniform manner for all government wage-board employees, whether seamen or not. Furthermore, in determining the applicability of this uniform statutory requirement, the court will be interpreting the pay regulation of an executive department. This task is typically within the province and expertise of the Court of Claims.

We think the foregoing indicates that with respect to these wage claims, Congress thought of these petitioners more as government employees who happened to be seamen than as seamen who by chance worked for the Government. The remaining problems relate to specific legislative amendments. The Government approaches this by noting that the Suits in Admiralty Act specifically repealed the Tucker Act so far as the two conflicted. This may readily be conceded, see, *e. g., Calmar S. S. Corp.* v. *United States,* 345 U. S. 446, 455–456; *Matson Navigation Co.* v. *United States,* 284 U. S. 352. Compare *Patterson* v. *United States,* 359 U. S. 495. From this proposition it adduces the principle that exclusive admiralty jurisdiction is now so deeply woven in the fabric of the law that congressional action is required to overturn it, cf. *State Bd. of Ins.* v. *Todd Shipyards,* 370 U. S. 451, 458. This principle is sound where applicable, but such is not the case here.

The evolution of the law, both statutory and judicial, indicates that at least until 1960, the jurisdiction of the Court of Claims over government seamen's wage claims was unchallenged. We do not understand the Government to dispute this fact. For example, wage claims by federal employees were found to be expressly within the ambit of the Tucker Act in *Bruner* v. *United States,* 343 U. S. 112, 115. In *United States* v. *Townsley,* 323 U. S. 557, this Court affirmed a judgment against the Government for overtime wages in favor of a government-employed operator of a dredge. The Court of Claims

had assumed jurisdiction over the suit, 101 Ct. Cl. 237, and the Government never disputed the issue. Subsequent cases are to the same effect.[9] It was on this line of precedent that the petitioners relied in bringing suit. This fact is worthy of mention to illustrate the impact upon claimants whose suits would otherwise be time-barred if we were now to hold that the Suits in Admiralty Act restricted all suits in cases like the present to the district courts, cf. *Brady* v. *Roosevelt S. S. Co.*, 317 U. S. 575, 581.

In 1960, Congress addressed itself to the jurisdictional overlap between the Tucker Act and the Suits in Admiralty Act. Its major aim was to empower the Court of Claims to transfer suits to the district courts when the latter had exclusive jurisdiction over them. This it accomplished by providing that when the transfer was made, the original filing in the Court of Claims would toll the applicable limitations period, Act of Sept. 13, 1960, Pub. L. 86–770, 74 Stat. 912, 28 U. S. C. § 1506. Simultaneously, Congress abolished the distinction between public and merchant vessels, a matter which had sorely confused attorneys and had caused misfilings in the past, S. Rep. No. 1894, 86th Cong., 2d Sess., pp. 3, 6. In amending the Suits in Admiralty Act, Congress also wanted to affirm the existing law that suits which were justiciable exclusively under it would be brought only in the district courts. The new § 2 of the Act, 46 U. S. C. § 742, in the words of the Senate Report, S. Rep. No. 1894, *supra*, at p. 2,

"restates in brief and simple language the now existing exclusive jurisdiction conferred on the district

---

[9] See, *e. g., Hearne* v. *United States,* 107 Ct. Cl. 335, 68 F. Supp. 786, cert. denied, 331 U. S. 858; *Adams* v. *United States,* 141 Ct. Cl. 133; *Abbott* v. *United States,* 144 Ct. Cl. 712, 169 F. Supp. 523. See also *Continental Casualty Co.* v. *United States,* 140 Ct. Cl. 500, 156 F. Supp. 942.

courts, both on their admiralty and law sides, over cases against the United States which could be sued on in admiralty if private vessels, persons, or property were involved." [10]

The Government would have us believe that this oblique reference to private "persons" was designed to make inroads on the right of government employees to sue in the Court of Claims. We reject this argument. The legislative history surrounding this enactment contains no discussion whatever concerning claims brought by government-employed seamen. This is highly significant because of the active interest in nautical legislation generally taken by the maritime labor unions. If Congress had meant to lower the limitations period from six to two years, surely these unions would have been privy to the decision; this is all the more true when one considers that seamen are often stationed far away from their home ports and need a lengthy period in which to register their claims. If they were governed by the maritime Act, they would be required not only to sue but to exhaust administrative remedies as well within the shorter period, 46 U. S. C. § 745 (1964 ed.).

In effect, the Government asks us to repeal the former practice by implication. We have held in numerous cases that such a request bears a heavy burden of per-

---

[10] As amended, 46 U. S. C. § 742 now provides in pertinent part: "In cases where if such vessel [owned by the United States] were privately owned or operated, or if such cargo were privately owned or possessed, or if a private person or property were involved, a proceeding in admiralty could be maintained, any appropriate non-jury proceeding in personam may be brought against the United States . . . . Such suits shall be brought in the district court of the United States for the district in which the parties so suing, or any of them, reside or have their principal place of business in the United States, or in which the vessel or cargo charged with liability is found. . . ."

suasion, *e. g., Bulova Watch Co.* v. *United States,* 365 U. S. 753, 758; *Fourco Glass Co.* v. *Transmirra Corp.,* 353 U. S. 222, 228–229. Further, Congress had the opportunity in 1964 to deprive government-employed claimants of their rights when it amended the Tucker Act itself. Instead, Congress broadened the forums available to plaintiffs suing the Government for fees, salary or compensation for official services, giving the district courts concurrent jurisdiction with the Court of Claims in matters of less than $10,000, 78 Stat. 699, 28 U. S. C. § 1346 (d) (1964 ed.).

As in other jurisdictional questions involving intersecting statutes, there is no positive answer. We can do no more than to exercise our best judgment in interpreting the will of Congress. In this instance, we believe the traditional treatment of federal employees by the Government tips the balance in favor of Court of Claims jurisdiction. The Court of Claims possesses the expertise necessary to adjudicate government wage claims. It also serves as a centralized forum for developing the law, particularly in large wage claim suits. These tasks have been its responsibility since 1887. In multi-party wage suits of large amounts, having one forum eliminates any problem of transferring venue from several district courts to one locale, see 28 U. S. C. § 1406 (1964 ed.). If we are here misconstruing the intent of Congress, it can easily set the matter to rest by explicit language. We therefore reverse and remand the suits to the Court of Claims for further proceedings.

*It is so ordered.*

MR. JUSTICE HARLAN, whom MR. JUSTICE STEWART joins, dissenting.

In my opinion a course of legal history, reflecting both decisions of this Court and congressional enactments,

precludes the interpretation that is now placed on the Suits in Admiralty Act, 41 Stat. 525, as amended, 46 U. S. C. § 741 *et seq.* (1964 ed.).

## I.

The Suits in Admiralty Act was enacted in 1920 to deal with problems created by the formation of a large government-owned merchant fleet during World War I. The Act established a method to sue the United States in admiralty that would protect the interests of libellants while at the same time prevent *in rem* attachments of government vessels during a possible emergency. See S. Rep. No. 223, 66th Cong., 1st Sess. (1919); H. R. Rep. No. 497, 66th Cong., 2d Sess. (1919); 58 Cong. Rec. 7317 (1919); 59 Cong. Rec. 1684–1688 (1920). Although the creation of this statutory procedure for suits in admiralty was occasioned by particular needs, the early cases, discussed below, held unmistakably, first, that the Act provided the exclusive admiralty remedy against the United States, and, second, that it was exclusive of all other remedies affording relief for an underlying claim cognizable in admiralty.

The Suits in Admiralty Act provides the procedure for suits against the United States or a government-owned corporation "[i]n cases where if such vessel were privately owned or operated, or if such cargo were privately owned or possessed, or if a private person or property were involved, a proceeding in admiralty could be maintained . . . ." 46 U. S. C. § 742. A narrow construction of the statute was unanimously rejected in *Eastern Transp. Co.* v. *United States,* 272 U. S. 675, where the Court held that the Act made the Government amenable to any cause of action in admiralty, *in rem* or *in personam,* to which a private owner would be liable. 272 U. S., at 690. This view was reiterated and reinforced in *Fleet Corp.* v. *Rosenberg Bros.,* 276 U. S. 202. There

the libellants sued the government-owned Fleet Corporation in admiralty. The cause was time-barred under the Suits in Admiralty Act, but the respondents argued that the remedy provided by the Act did not preclude a nonstatutory suit in admiralty against the public corporation. The Court held that the Act provided the *exclusive* admiralty remedy against the United States or its agencies. It left open, however, the question whether "the Act also prevents a resort to any concurrent remedies against the United States . . . on like causes of action in the Court of Claims or in courts of law . . . ." 276 U. S., at 214.

This reservation was laid at rest in *Johnson* v. *Fleet Corp.*, 280 U. S. 320. There four cases were consolidated: two involved seamen's allegations of negligence; the third alleged breach of contract affecting cargo; the fourth alleged loss of cargo due to negligence. The suits were barred by the Suits in Admiralty statute of limitations, but it was argued that Tucker Act and common-law remedies were still available. The Court held squarely for the Government in spite of well-briefed arguments and some support from legislative history that the admiralty jurisdiction was not meant to be exclusive in such cases.[1] Reviewing the structure of the Act and basic congressional intent, the Court stated that the Act's purposes would not be served "if suits under the Tucker Act and in the Court of Claims be allowed against the United States and actions at law in state and federal courts be permitted against the Fleet Corporation or

---

[1] Legislative history bearing on this aspect of the question is meager, although one colloquy during the House Committee on the Judiciary hearings on this bill suggests that concurrent jurisdiction with the Court of Claims might have been contemplated in certain situations. Hearing before the House Committee on the Judiciary on the Attorney General's Substitute for S. 3076 and H. R. 7124, 66th Cong., 1st Sess., ser. 8, at 48 (1919).

other agents for enforcement of the maritime causes of action covered by the Act." 280 U. S., at 327. The Court concluded "that the remedies given by the Act are exclusive in all cases where a libel might be filed under it." *Ibid.*

This interpretation of the Suits in Admiralty Act was subsequently recognized and ultimately adopted by the Congress, which on various occasions has amended the Act or passed supporting legislation premised on the exclusivity of the Act over all claims that might be heard in admiralty. Soon after the *Johnson* case, *supra,* was decided, the Congress acted to mitigate its effects on those who were barred by its two-year limitation. In an Act of June 30, 1932, 47 Stat. 420, § 5 of the Suits in Admiralty Act was amended to waive the two-year period for suitors who had filed timely actions elsewhere before the *Johnson* decision.[2] In 1950, in order to eliminate any remaining confusion, § 5 was again amended to codify the *Johnson* rule as applied to government agents, namely, "[t]hat where a remedy is provided by . . . [the Suits in Admiralty Act] it shall hereafter be exclusive of any other action by reason of the same subject matter against the agent or employee of the United States . . . ." 64 Stat. 1112, 46 U. S. C. § 745 (1964 ed).

---

[2] Again in 1950 Congress extended the limitations period to accommodate those employees who, in reliance upon a prior decision, *Hust* v. *Moore-McCormack Lines,* 328 U. S. 707, overruled in *Cosmopolitan Co.* v. *McAllister,* 337 U. S. 783, had not filed suit against the United States under the Suits in Admiralty Act for a tort committed when a government-owned ship was being operated by a private company as general agent for the Government. 64 Stat. 1112, 46 U. S. C. § 745 (1964 ed.). The Senate report noted that "[t]o prevent future repetition of such mistakes the bill expressly restates the existing law that the remedy by suit against the United States is exclusive of every other type of action by reason of the same subject matter against the United States or against its employees or agents." S. Rep. No. 2535, 81st Cong., 2d Sess., 1 (1950).

See S. Rep. No. 2535, 81st Cong., 2d Sess. (1950), quoted in note 2, *supra;* H. R. Rep. No. 1292, 81st Cong., 1st Sess. (1949).

The statutes affecting the Court of Claims directly were also altered by Congress to conform with the basic structure of the exclusive admiralty jurisdiction. In 1948 the Tucker Act was amended to strike the word "admiralty" from the scope of that court's jurisdiction. Act of June 25, 1948, c. 646, 62 Stat. 940, 28 U. S. C. § 1491 (1964 ed.).[3] In 1960, an Act was passed to facilitate transfers of admiralty actions from the Court of Claims to the federal district courts and to toll the running of the statute of limitations in such cases so that litigants who sued, incorrectly, in the Court of Claims would not be required to file a new suit in the district court which might by then be time-barred. Act of September 13, 1960, 74 Stat. 912, 28 U. S. C. § 1506 (1964 ed.). Recognition of the exclusive admiralty jurisdiction of the district courts prompted enactment of this statute. See H. R. Rep. No. 523, 86th Cong., 1st Sess. (1959); S. Rep. No. 1894, 86th Cong., 2d Sess. (1960).

## II.

This survey of case law and statutory development indicates quite clearly that the jurisdiction of the district courts is exclusive in actions falling within the purview of the Suits in Admiralty Act, and that the test for determining whether an action falls within that class is whether "a libel might be filed under [the Act]," *Johnson v. Fleet Corp., supra,* at 327, or in the words of the statute directly, whether "if such vessel were privately

---

[3] The House report noted: "the Court of Claims has no admiralty jurisdiction, but the Suits in Admiralty Act . . . vests exclusive jurisdiction over suits in admiralty against the United States in the district courts." H. R. Rep. No. 308, 80th Cong., 1st Sess., App. p. 138 (1947).

owned or operated . . . a proceeding in admiralty could be maintained." 46 U. S. C. § 742.

Until today the basic test for the Act's applicability has been a familiar historical one, for the statutory term "proceeding in admiralty" is quite obviously coextensive with its meaning in ordinary legal usage. In the case now before us, the question for the Court is whether the claim for back wages by these seamen would be heard by an admiralty court if their employer were a private person. The answer is clearly in the affirmative, see *Sheppard* v. *Taylor*, 5 Pet. 675; *Kossick* v. *United Fruit Co.*, 365 U. S. 731, 735. It is stated in 1 Benedict, The Law of American Admiralty 124 (6th ed. Knauth 1940): "The mariners of a ship are commonly said to be wards of the admiralty. Their wages, their rights, their wrongs and injuries have always been a special subject of the admiralty jurisdiction." It is true that the claim against a private employer might also be litigated in a common-law court, see *Leon* v. *Galceran*, 11 Wall. 185; 1 Benedict, *supra*, at 35. But the fact that there is concurrent jurisdiction over such a claim in private litigation is irrelevant for purposes of a suit against the sovereign, for as shown above, the Suits in Admiralty Act is exclusive over any action which "could be maintained" in admiralty. This is indubitably such a claim.

### III.

The Court, while recognizing "that the Suits in Admiralty Act specifically repealed the Tucker Act so far as the two conflicted," *ante*, p. 163, avoids the result compelled by prior interpretation of the Suits in Admiralty Act and conventional admiralty law, by formulating a new test for the statute's applicability. Instead of asking whether this suit is one traditionally within the scope of admiralty jurisdiction, it sees the interrelation of the Tucker Act and the Suits in Admiralty Act as requiring an inquiry

into the question whether the petitioners are more like federal employees than like mariners, and after weighing the factors involved concludes that they are more civil servants than seafarers. I believe this test presents a false basis for determining whether or not exclusive jurisdiction lies in admiralty and puts a mischievous gloss on the relevant statutes.

Obviously these petitioners are both federal employees *and* seamen. One label refers to their employer; the other to the type of work they perform. This dual classification might well be made of the status of employees in many private industries. A large corporation might have thousands of employees, some of whom are employed in maritime activities. Because of the evolution of our legal system these maritime employees can sue their employer in an admiralty court as well as at law; their land-based co-workers do not have that option. The fact that the contracts, pension rights, and other benefits and obligations may be similar for both types of employees is irrelevant for purposes of defining the admiralty court's jurisdiction over the claims of these maritime employees. Cf. *The Steam-Boat Thomas Jefferson*, 10 Wheat. 428; *International Stevedoring Co.* v. *Haverty*, 272 U. S. 50. The position of federal maritime employees should be no different. The argument of the Court showing that in many respects the rights of federal employees who are seamen are similar to the rights of federal employees who are not seamen, whatever its merits on its own terms, see Part IV, *infra*, does not negate the fact that the claims of these seamen are within the traditional scope of the admiralty jurisdiction. See *McCrea* v. *United States*, 294 U. S. 23, a claim for wages, *inter alia*, under the Suits in Admiralty Act.

Not only is the Court's approach based upon a false yardstick, but it contrives an impracticable test for applying a jurisdictional statute. The rule heretofore

used for the application of the Suits in Admiralty Act has been that, absent any clear statutory exception,[4] it encompasses any claim that could have been brought before an admiralty court were the defendant a private shipper. Since the scope of the admiralty jurisdiction is long established and generally well understood, suitors would normally know in what forum their cases should be brought. The Court's new test for determining the proper forum is whether the underlying cause of action is primarily of "a maritime nature." As the Court's opinion indicates, this inquiry can be resolved only after what in many instances will be a complicated and elusive process. Indeed, in this case, only after several pages of analysis is the Court able to determine that "with respect to these wage claims, Congress thought of these petitioners more as government employees who happened to be seamen than as seamen who by chance worked for the Government," *ante*, p. 163. Putting aside the fact that there is nothing to show that Congress ever contemplated such a "jurisdictional" standard, replacing the straightforward "admiralty jurisdiction" test by the unpredictable "primarily of a maritime nature" rule is bound to introduce confusion and uncertainty into determinations of the appropriateness of a particular forum, the very type of question that should have a reasonably definitive answer.

## IV.

The Court quite obviously construes the Act as it does because it is reluctant to deprive federally employed seamen of the longer statute of limitations available under

---

[4] Compare *Johansen* v. *United States,* 343 U. S. 427, and *Patterson* v. *United States,* 359 U. S. 495, in which it was held that the Federal Employees' Compensation Act of 1916, 39 Stat. 742, 5 U. S. C. § 751 *et seq.* (1964 ed.), provided the sole remedy for seamen injured on board government-owned vessels, thus barring suits under the Suits in Admiralty Act.

the Tucker Act. Apart from anything else, this can be accomplished, however, only at the expense of forfeiting other substantial advantages available under the Suits in Admiralty Act.

First, an admiralty court is likely to be better acquainted with many underlying questions involved in suits such as these, and to be more sensitive to the tradition that seamen are the "wards of the admiralty." For example, the Classification Act of 1949, 63 Stat. 954, as amended, 5 U. S. C. § 1082 (8) (1964 ed.), provides that federally employed crew members shall be compensated "as nearly as is consistent with the public interest in accordance with prevailing rates and practices in the maritime industry . . . ." One of the suits consolidated in this action raises the question of overtime payment for "port watch tours of duty," and the petitioner, citing the Classification Act, alleges that "prevailing rates" in the trade require "16 hours at overtime rates per 24 hour port watch tour of duty." Another complaint involves, *inter alia,* a naval rule regarding lunch periods where, due to the nature of the work, "it may not be administratively desirable to allow a specified period of time off for lunch." Navy Civilian Personnel Instruction 610.2–1k. Questions involving such subject matter are best heard in admiralty.[5]

Second, venue under the Tucker Act, for suits over $10,000 and all suits involving pension rights, is limited to the Court of Claims. 28 U. S. C. § 1346 (a), (d) (1964 ed.). Three of the four suits consolidated here are above the $10,000 limit, and thus can only be brought

---

[5] The Court's argument that this factor is offset by the peculiar expertise of the Court of Claims with respect to the nonmaritime components of government seamen wage claims is not persuasive. District courts, too, possess such expertise, born of their concurrent jurisdiction with the Court of Claims in government contract actions involving less than $10,000. 28 U. S. C. § 1346 (a) (1964 ed.).

in the District of Columbia. Of these three cases, two involve naval facilities at Fort Lauderdale, Florida. The interests of most maritime employees of the United States would probably be better served by allowing the more favorable venue provisions in admiralty.[6]

Third, interest provisions under the Suits in Admiralty Act are more favorable than under the Tucker Act. Under the latter statute interest runs at most from the date of judgment, 28 U. S. C. §§ 2411 (b), 2516 (1964 ed.), while in admiralty the court may award interest from the date the libel is filed. 46 U. S. C. §§ 743, 745 (1964 ed.). Greater court costs may also be awarded in admiralty. Compare 46 U. S. C. § 743 with 28 U. S. C. § 2412 (b) (1964 ed.).

Because of the Court's ruling today, all of these benefits are lost to *all* federally employed seamen, not merely to those involved in this case. The untoward results to which this decision leads in themselves engender the most serious misgivings as to the soundness of the Court's ruling, albeit it may be thought to produce a beneficent result in this particular instance.

I would affirm the judgment of the Court of Claims.

---

[6] 46 U. S. C. § 742 provides that suits under the Suits in Admiralty Act "shall be brought in the district court of the United States for the district in which the parties so suing, or any of them, reside or have their principal place of business in the United States, or in which the vessel or cargo charged with liability is found."