Harry J. AMELL et al.

v.

The UNITED STATES.

No. 387–64.

United States Court of Claims.

Feb. 16, 1968.

David Scribner, New York City, for plaintiffs. Lee Pressman, New York City, attorney of record. Joan Stern Kiok, New York City, of counsel.

Thomas J. Lydon, Washington, D. C., with whom was Asst. Atty. Gen. Edwin L. Weisl, Jr., for defendant.

Before COWEN, Chief Judge, and LARAMORE, DURFEE, DAVIS, SKELTON and NICHOLS, Judges.

## ON PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT

COWEN, Chief Judge.

Plaintiffs are civilian marine engineers employed by the Military Sea Transport Service, Atlantic Area (MSTS), Department of the Navy. They brought this suit to recover additional wages claimed to be due as a result of allegedly comparable pay increases which were granted to commercial marine engineers by commercial maritime carriers.[1] Since there is no dispute between the parties concerning the facts, the only issues to be resolved are legal questions raised by cross-motions for summary judgment.

### I

Plaintiffs are all members of District No. 1, National Marine Engineers Beneficial Association (MEBA). MEBA is the collective bargaining agent for marine engineers and negotiates agreements with commercial maritime carriers. Pursuant to Executive Order 10988, an agreement was negotiated, whereby MSTS has at all times material to this case recognized MEBA as the exclusive representative of all civilian marine employees, including plaintiffs, serving in Engine Department officer positions in MSTS, Atlantic Area.

Plaintiffs are wage board employees. Their wages are not set through collective bargaining negotiations but are fixed by administrative action pursuant to the Federal Employees Pay Act of 1945, 59 Stat. 305, as amended, 5 U.S.C. § 946 (1964) and by the Classification Act of 1949, 63 Stat. 954, as amended, 5 U.S.C. § 1082 (1964).

The Classification Act of 1949 provides in pertinent part:

This chapter * * * shall not apply to—

* * * * * *

(8) officers and members of crews of vessels, whose compensation shall be fixed and adjusted from time to time as nearly as is consistent with the public interest in accordance with prevailing rates and practices in the maritime industry;

The Federal Employees Pay Act of 1945 provides in pertinent part:

Employees of the Transportation Corps of the Army of the United States on vessels operated by the United States,[2] * * * may be compensated in accordance with the wage practices of the maritime industry.

Pursuant to the Classification Act of 1949, the Department of the Navy issued regulations entitled "Civilian Marine Personnel Instructions" (CMPI–721), which in paragraph 1–3 thereof entitled "Policy on 'Prevailing Rates and Practices'", read as follows:

a. Determination.—Prevailing pay rates and practices in the maritime industry are ascertained by analysis of:

(1) administrative practices concerning marine personnel employed by commercial maritime carriers,

(2) agreements and contracts between commercial carriers and maritime labor unions, and

(3) current marine positions throughout the maritime industry.

Specific industry rates and practices per se are not always directly transferable to MSTS marine positions because of variations among pay rates and practices in the maritime industry

1. This case was first brought in this court in 1964. We ordered it transferred to the District Court for the Southern District of New York, believing it to be a case involving original admiralty jurisdiction. On review, the Supreme Court held that the cause of action is one to recover civilian pay under the Tucker Act and that this court is the proper forum.

Amell v. United States, 384 U.S. 158, 86 S.Ct. 1384, 16 L.Ed.2d 445 (1966).

2. The Department of the Navy took over operation of vessels formerly operated by the Transportation Corps of the Army under a Directive dated August 2, 1949, issued by the Secretary of Defense. See 14 F.R. 5203 (1949).

itself, and differing pay practices between industry and the government. However, the Navy Department follows prevailing rates and practices as closely as is consistent with the public interest.

In Article XII of the collective bargaining agreement negotiated between MSTS and MEBA, the foregoing instructions were copied verbatim. In addition, Article III of the negotiated agreement provided as follows:

It is agreed and understood by the employer [MSTS, Atlantic Area Command] and the employee organization [MEBA] that this agreement is subject to the provisions of CMPI 721 and any other applicable existing or future laws or regulations of the Federal Government, including but not restricted to those rules and regulations issued by the Civil Service Commission, the Department of Defense, the Department of the Navy, and the Commander, Military Sea Transportation Service, which may be set forth in the Federal Personnel Manual, the Federal Code of Regulations, other provisions of the Civilian Marine Personnel Instructions, U. S. Navy Regulations, and General Orders of the Secretary of the Navy.

## II

Prior to 1962, no dispute arose between plaintiffs and the Government with respect to the compensation due plaintiffs. When the wages of licensed marine engineers were increased as a result of collective bargaining between the representatives of the private shipping companies and MEBA, the Department of the Navy took such negotiated agreements into effect and paid plaintiffs precisely the same rates of pay as were granted to marine engineers in the maritime industry.

Before June 15, 1962, the private shipping companies contributed specified sums to the MEBA Pension and Welfare Plans, but no contribution to the plans was made by the licensed maritime engineers in private industry. During the same period of time retirement or pension benefits for MSTS maritime personnel were provided for in the Civil Service Retirement Act, 5 U.S.C. § 2251 et seq. (1964). There is no indication in the record that in the period preceding June 15, 1962, MEBA ever requested the Department of the Navy to increase the wages of MSTS employees on account of any contributions made to the MEBA Pension and Welfare Plans by the private shipping companies.

## III

The dispute that resulted in this action was occasioned by a collective bargaining agreement entered into between MEBA and the private carriers, which was effective June 16, 1961, and provided:

\* \* \* \* \* \*

The Union may request two Wage Reviews on 60 days prior written notice, provided however, that the first such review may not be held prior to June 15, 1962 and the second review may not be held prior to June 15, 1963.

Said Wage Reviews may include any matter of cost provided that the first review may not exceed a cost of three and one-half per cent (3½%) of base wages and the second review may not exceed a cost of three and one-half per cent (3½%) of base wages.

Under the terms of the agreement, the affected employees were given the right to determine whether the increased employer contributions were to be applied to base wages or deposited in the MEBA Pension and Welfare Plan. The members of the union voted to put the entire increase resulting from the wage review of June 15, 1962, into pension and welfare benefits. Accordingly, on June 28, 1962, MEBA entered into an agreement with the shipping companies, effective retroactively to June 16, 1962, that the companies would increase their contributions to the MEBA Pension and Welfare Plan by the amount of $0.865 per day per licensed engineer; this contribution was equivalent to 3½ percent of the base wages paid to such employees. There was no increase in the base wages of em-

ployees of the commercial carriers, and the basic wages of MSTS employees remained unchanged.

Effective as of June 16, 1963, the private carriers and MEBA entered into another agreement, whereby the contributions of the employers to employment costs were increased by 3½ percent of the base wages of the employees. The implementing agreement between the parties provided that the entire amount of the contribution should be used to increase the basic monthly wages of certain licensed engineers and to pay additional compensation for nonwatchstanding, for overtime, and for related services. Promptly thereafter on August 30, 1963, the Department of the Navy approved similar changes, retroactive to June 16, 1963, whereby the basic wage rates for MSTS licensed engineers, including plaintiffs, were increased to the same extent.

By letter of December 9, 1963, the President of MEBA wrote the Secretary of the Navy as follows:

\* \* \* \* \* \*

Our request is for a 3½% pay raise for MSTS engineers as of June 15, 1962 and now a further 3½% raise as of June 15, 1963.[3] Our contract called for such raises with a provision that these pay raises could be used at our discretion. Our membership voted to put them into Pension and Educational benefits. It is our contention that these were pay raises by virtue of our contract and that MSTS is obligated to follow and give its engineers the same percentage raise.

The Secretary of the Navy denied the request by letter of December 30, 1963, which stated:

\* \* \* \* \* \*

The matter of which you write has been the subject of close review by the Military Sea Transportation Service and the Department of the Navy. The Military Sea Transportation Service and the Department have consistently granted to civilian marine employees the same wage increases which have occurred in the maritime industry and which have been paid as such to seamen employed by commercial ship operators. It is the view of the Department that the increases of which you write do not represent wages paid to the members of your organization but rather are increments in pension and educational benefits. As you know, regular civilian marine employees of the Military Sea Transportation Service are covered by the Civil Service Retirement Act, and the employer pays sizable amounts into the retirement fund. Furthermore, the Congress, from time to time, appropriates substantial sums into this fund.

We have in the past conformed and shall continue in the future to conform with the letter and spirit of law controlling our Military Sea Transportation Service wage policy. However, it must be made clear that benefits negotiated in the commercial sector and not paid as wages cannot be accepted for comparability pay adjustment by the Department. A contrary view would lead the Navy into the untenable position of effecting compensation exceeding, in fact, that of the maritime industry.

■ Plaintiffs brought this action following the adverse decision of the Secretary of the Navy. The only issue to be determined is whether the Secretary was required by law to increase the base wage rates of MSTS maritime personnel in an amount equivalent to the contributions made by the private shipping companies to the MEBA Pension and Welfare Plans, effective as of June 16, 1962. Plaintiffs admit that if the Secretary of the Navy had acceded to their demand, the base wage rates of MSTS maritime personnel, including plaintiffs, would have exceeded the base wage rates of industry maritime personnel. Plaintiffs also acknowledge that, since retirement and pension benefits for MSTS employees were provided by the Civil Service Re-

---

3. The claim for 1963 is not now in issue in this case.

tirement Act, the Navy is precluded from increasing pension benefits for such employees unless and until that act is amended. Nevertheless, plaintiffs contend that the law required the Secretary of the Navy to increase their base wages by 3½ percent, because the employees of the shipping companies received increased benefits to that extent through the contributions of their employers to the Pension and Welfare Plan of MEBA. For the reasons hereinafter stated, we disagree with this contention and hold that plaintiffs are not entitled to recover.

## IV

Much of the difficulty presented by this case is occasioned by the use of the word "compensation" in the comparability provision of the Classification Act of 1949, in the regulations, and in Article XII of the negotiated contract. Since neither party has cited any decisional law which is dispositive of the question, we think the congressional intent is to be determined by viewing the term "compensation" in its broad statutory context and in connection with various benefits which Congress has provided for MSTS employees in other laws. From such an analysis it becomes apparent that Congress did not intend "compensation" to cover either the whole ambit of employment costs or those in issue here.

The Federal Employees Pay Act of 1945, upon which plaintiffs rely in part, states in the title thereof that it is "An act to improve salary and wage administration in the Federal Service; to provide pay for overtime and for night and holiday work; to amend the Classification Act of 1923, as amended; * * * ". The word "compensation" is used throughout the statute with reference to wages and salaries of Government employees, to pay for overtime and holiday work, to periodic within-grade salary advancements, and to other pay granted directly to Federal employees. There is nothing in the act which makes any distinction between "compensation" and wages and salaries.

Again, the Classification Act of 1949 was passed for the purpose of providing a plan for the classification of positions in the Federal Service and to establish rates of basic compensation. It is essentially a scheme for determining the wages and salaries to be paid Federal employees and uses the term "compensation" throughout with reference to salaries and wages.

Of even greater significance is the fact that throughout the period involved in this dispute, personnel employed by the private shipping companies received fringe benefits under collective bargaining agreements, whereas the MSTS employees received comparable, although not necessarily equivalent benefits, under various acts of Congress other than the Classification Act of 1949. Such other acts include the Civil Service Retirement Act, 70 Stat. 743, as amended, 5 U.S.C. § 2251 (1964) [now 5 U.S.C. § 8331]; Federal Employees Group Life Insurance Act of 1954, 68 Stat. 736, as amended, 5 U.S.C. § 2091 (1964) [now 5 U.S.C. § 8701]; Federal Employees Health Benefits Act of 1959, 73 Stat. 708, 5 U.S.C. § 3001 (1964) [now 5 U.S.C. § 8901]; Annual and Sick Leave Act of 1951, 65 Stat. 679, as amended, 5 U.S.C. § 2061 (1964) [now 5 U.S.C. § 6301], as further amended by the Act of November 2, 1966, 80 Stat. 1179; Compensation for Injuries to Employees of United States, 39 Stat. 742, as amended, 5 U.S.C. § 751 (1964) [now 5 U.S.C. § 8101]. No regulatory or contractual attempt was made to tie in the benefits received by MSTS employees under such statutes with those granted to the employees of the private shipping companies for the simple reason that none of the cited acts excludes MSTS employees from its coverage and none contains a comparability provision like that in the Classification Act of 1949.

Our holding is buttressed by the fact that in 1966, the attention of Congress was directed to the fact that MSTS was encountering difficulty in recruiting civilian employees because of the more liberal leave policy of the private shippers. Thereupon, Congress passed a statute to provide additional "home leave" for MSTS employees, the Act of November

2, 1966, 80 Stat. 1179, amending 5 U.S.C. § 6305. Since an act of Congress was required to effectuate the change, it seems clear that any attempt to equalize the home leave of MSTS employees through changes in the regulations or in the negotiated contract would have violated the statute as it stood prior to the amendment.

Thus, the inference to be drawn from the fact that benefits for MSTS employees are provided in various statutes, totally distinct from the Classification Act of 1949, is that the word "compensation", as used in that statute, is not broad enough to encompass benefits provided in other laws.

## V

Defendant argues that the applicable law vested discretion in the Secretary to grant or to deny the wage increase requested by MEBA. In reliance on the statutory phrase "consistent with the public interest," defendant asserts that the Classification Act of 1949 "clothes the Secretary with a mantle of discretion." Plaintiffs reply that the increase was mandatory under the law and that the Secretary had only the limited discretion to make sure that the increased rates would be consistent with the public interest; they cite Pacific Power & Light Co. v. Federal Power Comm'n, 111 F.2d 1014 (9th Cir. 1940). It is not clear from the Secretary's decision whether he felt required by law to reject plaintiffs' claim or whether he denied it within the limits of his discretion. Although he did not decide expressly that the approval of plaintiffs' request would be inconsistent with the public interest, he stated that the increased contributions paid by the private shipping companies represented increments in pension and educational benefits rather than wages, and called attention to the fact that MSTS employees were covered by the Civil Service Retirement Act. Moreover, in rejecting the claim, he declared that a contrary position would lead the Navy into the untenable position of providing compensation for MSTS employees which would exceed that received by employees of the private carriers.

■ There is considerable doubt whether the Secretary had any discretion to grant the wage increases involved in this dispute. However, if we assume without deciding that some degree of discretion resided in the Secretary, we hold that he did not abuse that discretion in his decision. Crawford v. United States, 376 F.2d 266, 179 Ct.Cl. 128 (1967), cert. denied, January 15, 1968, 389 U.S. 1041, 88 S.Ct. 781, 19 L.Ed.2d 831.

## VI

■ Finally, plaintiffs argue that the concept that prevailing wages include fringe benefits has become widely recognized in recent years. In particular, they call attention to an amendment to the Davis-Bacon Act, 46 Stat. 1494, 40 U.S.C. § 276a (1964), which included fringe benefits in the definition of prevailing wages for laborers and employees of contractors on public works. Although this argument is somewhat appealing, it collides with the fact that specific provisions in applicable statutes are required to bring "fringe benefits" within the concept of "prevailing wages," and that no such amendments have been made to the statutes affecting plaintiffs. As the Supreme Court said in a comparable situation, "If civilian seamen employed by the Government are to be accorded rights different from or greater than those they enjoy under the Compensation Act, it is for Congress to provide them." Patterson v. United States, 359 U.S. 495, 496–497, 79 S.Ct. 936, 937, 3 L.Ed.2d 971 (1959).

Plaintiffs' motion for summary judgment is denied; defendant's cross-motion for summary judgment is granted, and plaintiffs' petition is dismissed.