**Charlie MOORE, et al., Plaintiffs,**

v.

**The UNITED STATES, Defendant.**

**No. 695–89C.**

United States Claims Court.

Oct. 12, 1990.

Lawrence F. Smith, Radcliff, Ky. (David B. Stinson, Saul, Ewing, Remick & Saul, Washington, D.C., of counsel), for plaintiffs.

Jonathan M. Kronheim, Washington, D.C., with whom was Asst. Atty. Gen. Stuart M. Gerson (Marie Amie Malouf, Asst. Gen. Counsel, Army and Air Force Exchange Service, Dallas, Tex., of counsel), for defendant.

## ORDER

NETTESHEIM, Judge.

This case is before the court after argument on defendant's motion to dismiss for lack of subject matter jurisdiction. At issue is whether Congress has confined claims of employees of non-appropriated fund instrumentalities to those based on employment contracts only, such that appointed employees cannot sue even if they may state a claim under a statute that mandates the payment of money.

## FACTS

Plaintiff Charlie Moore and 32 other employees ("plaintiffs") of the Dayton Distribution Activity, Easter Distribution Region, Army Air Force Exchange Service (the "AAFES"), filed this action for back wages and salary increases. Plaintiffs are motor vehicle operators hired by the AAFES. Plaintiffs were appointed to their positions in accordance with AAFES personnel regulations and policy. From 1983 through 1989, the AAFES conducted wage grade surveys to determine the current wage rates and to assure non-appropriated fund employees fair rates of pay. Plaintiffs allege that the AAFES conducted the applicable wage grade surveys in an arbitrary and capricious manner in fixing plaintiffs' rate of pay at an average of less than $8.00 per hour. According to the complaint, the wage-grade survey showed that the average pay for all establishments was in excess of $10.00 per hour and that wage grade truckers employed by the AAFES at the same location for another division of the Government earn in excess of $12.00 per hour. Additionally, plaintiffs charge that the AAFES has failed to prevent inter-agency discrepancies in wages among federal employees working under similar conditions despite repeated requests for review and that, as a result, plaintiffs have not received the compensation to which they are entitled. Defendant moved to dismiss the complaint on the ground that the Tucker Act does not permit claims by appointees of non-appropriated fund instrumentalities.

Plaintiffs' complaint suggests that jurisdiction is present based on the Tucker Act's provision that the Claims Court may hear claims based on an implied or express contract with the United States, 28 U.S.C. § 1491(a)(1) (1988). No other statute was cited. However, plaintiffs opposed defendant's motion on the basis that the Tucker Act confers jurisdiction over claims based on a statute that mandates the payment of money. Plaintiffs point to 5 U.S.C. §§ 5341–5343 (1988), which provide, in pertinent part:

§ 5341. Policy

It is the policy of Congress that rates of pay of prevailing rate employees be fixed and adjusted from time to time as nearly as is consistent with the public interest in accordance with prevailing rates and be based on principles that—

(1) there will be equal pay for substantially equal work for all prevailing rate employees who are working under similar conditions of employment in all agencies within the same local wage area;

(2) there will be relative differences in pay within a local wage area when there are substantial or recognizable differences in duties, responsibilities, and qualification requirements among positions;

(3) the level of rates of pay will be maintained in line with prevailing levels for comparable work within a local wage area; and

(4) the level of rates of pay will be maintained so as to attract and retain qualified prevailing rate employees.

§ 5342. Definitions; application

. . . .

(a)(2) "prevailing rate employee" means—

(A) an individual employed in or under an agency in a recognized trade or craft, or other skilled mechanical craft, or in an unskilled, semiskilled, or skilled manual labor occupation, and any other individual, including a foreman and a supervisor, in a position having trade, craft, or laboring experience and knowledge as the paramount requirement;

(B) an employee of a nonappropriated fund instrumentality described by section 2105(c) of this title who is employed in a recognized trade or craft, or other skilled mechanical craft, or in an unskilled, semiskilled, or skilled manual labor occupation, and any other individual, including a foreman and a supervisor, in a position having trade, craft, or laboring experience and knowledge as the paramount requirement; and

**§ 5343. Prevailing rate determinations; wage schedules; night differentials**

(a) The pay of prevailing rate employees shall be fixed and adjusted from time to time as nearly as is consistent with the public interest in accordance with prevailing rates. Subject to section 213(f) of title 29, the rates may not be less than the appropriate rates provided by section 206(a)(1) of title 29....

## DISCUSSION

1. *Jurisdiction under the Tucker Act*

Defendant relies on the Supreme Court's decision in *United States v. Hopkins*, 427 U.S. 123, 96 S.Ct. 2508, 49 L.Ed.2d 361 (1976), to support its argument that there is no basis upon which plaintiffs can bring suit in the Claims Court under the Tucker Act.

Plaintiff in *Hopkins*, the decedent of a civilian employee of AAFES, sued for back pay alleging wrongful discharge and breach of an employment contract. The Government moved to dismiss claiming that the Tucker Act was not applicable to employment contracts involving AAFES personnel and, alternatively, that AAFES employees were appointed to their positions

and thus do not have a contractual relationship with their employer. The Tucker Act then conferred, as it does now, jurisdiction for any express or implied contract with the United States. Prior to 1970 the Tucker Act did not waive immunity from suits against the United States based on contracts with the AAFES. In 1970 Congress amended the Tucker Act to permit suits by contractors with the AAFES. Pub.L. No. 91–350, 84 Stat. 449. The Supreme Court concluded in *Hopkins* that the Tucker Act was applicable to AAFES employment contracts, as well as to actions by contractors. 427 U.S. at 126, 96 S.Ct. at 2510. After examining the regulations applicable to AAFES employees, the Court ruled that it is possible that they are appointed to their positions. *Id.* at 127–28, 96 S.Ct. at 2511–12. Consequently, the Court remanded the case for determination of whether plaintiff entered into an employment contract with the Government or whether he was appointed to his position, in which case there would be no basis for jurisdiction. *Id.* at 130–31, 96 S.Ct. at 2512–13.

Defendant also cites the Supreme Court's decision in *Army and Air Force Exchange Service v. Sheehan*, 456 U.S. 728, 102 S.Ct. 2118, 72 L.Ed.2d 520 (1982). Like *Hopkins, Sheehan* also involved an AAFES employee who brought suit for wrongful discharge, seeking reinstatement and damages. Similar to plaintiff in *Hopkins*, plaintiff in *Sheehan* claimed that the Tucker Act afforded him a remedy because he had an express or implied contract with the United States. He urged that, rather than being appointed to his position, he had entered into an employment contract with the AAFES. Additionally, plaintiff asserted that the regulations governing the dismissal of an employee created an implied-in-fact contract. The Court held that AAFES employees are appointed to their positions and that an express employment contract therefore did not exist. 456 U.S. at 736, 102 S.Ct. at 2123. The Court further held: "[T]he Court of Appeals erred in implying a contract based solely on the existence of AAFES personnel regulations and in premising Tucker Act jurisdiction on

those regulations, which do not explicitly authorize damages awards...." *Id.* at 741, 102 S.Ct. at 2126.

Defendant argues that plaintiffs fail to allege, as required by the Tucker Act, the existence of an express or implied employment contract and, further, that as appointed employees they cannot allege such a contractual relationship with the Government. Plaintiffs take the position that the need for the requisite contract to establish jurisdiction under the Tucker Act is not the dispositive issue. Rather, plaintiffs contend that the AAFES failed to comply with the requirements of the prevailing rate system to set wage rates that prevent interagency discrepancies among federal employees working under similar conditions. Unlike *Hopkins* and *Sheehan*, wherein each claimant asserted Tucker Act jurisdiction on the basis of an employment contract, plaintiffs contend that jurisdiction is grounded on the basis of a specific money-mandating statute. Defendant responds that the Supreme Court has established that the Claims Court's jurisdiction does not extend to appointed employees of non-appropriated fund instrumentalities regardless of the nature of their claims.

According to plaintiffs, 5 U.S.C. §§ 5341–5343 confer upon them a substantive right against the Government under the Tucker Act. However, in order for the statute to confer such a substantive right, it must be " 'interpreted as mandating compensation by the Federal Government for the damage sustained.' " *United States v. Testan*, 424 U.S. 392, 400, 96 S.Ct. 948, 954, 47 L.Ed.2d 114 (1976) (quoting *Eastport S.S. Corp. v. United States*, 178 Ct.Cl. 599, 607, 372 F.2d 1002, 1009 (1967)). In plaintiffs' view the requirement that the Government fix and adjust from time to time the pay of prevailing rate employees as nearly as is consistent with the public interest in accordance with prevailing rates mandates the payment of money. As authority for this position, plaintiffs point to *Best v. United States*, 10 Cl.Ct. 213 (1986).

Plaintiffs in *Best* were civilian technicians employed by the United States Reserve Aviation Support Facility. Suit was based on the Department of Defense's failure to pay plaintiffs the prevailing wage. Plaintiffs requested that the Claims Court direct the Department of Defense to increase their salaries commensurate with a proper wage survey, as well as to direct payment of back wages. In the instant case, plaintiffs also assert this inequity of treatment and seek an increase in their salaries and back wages. The *Best* plaintiffs contended that they held their positions under the prevailing rate system, 5 U.S.C. §§ 5341–5343, which confers upon them a substantive right enforceable against the Department of Defense. In the case at bar, plaintiffs also assert that the statutory basis for the prevailing rate system is set forth in 5 U.S.C. §§ 5341–5343. Section 5343(a) provides that "[t]he pay of prevailing rate employees shall be fixed and adjusted from time to time as nearly as is consistent with the public interest in accordance with prevailing rates...." Plaintiffs in this suit assert that the results from wage surveys taken by the AAFES show an average salary in excess of $10.00 per hour for all establishments, and wage grade truckers employed by the AAFES at the same location earn in excess of $12.00 per hour. Therefore, plaintiffs maintain that the determination of their salary at an average of less than $8.00 per hour was arbitrary and capricious. Similarly, plaintiffs in *Best* argued that Department of Defense deprived them of pay commensurate with similar technicians in local private industry. As plaintiffs in the instant case, plaintiffs in *Best* contended that the survey gave improper weight to the wages of dissimilar local workers and that it precluded weighing the wages of technicians conducting similar work in an adjacent county.

The Claims Court in *Best* cited *Bruner v. United States*, 343 U.S. 112, 115, 72 S.Ct. 581, 583, 96 L.Ed. 786 (1952), to the effect that "[w]age claims by government employees are within the ambit of the Tucker Act...." 10 Cl.Ct. at 215. The Claims Court further held that it "[has] jurisdiction to consider the plaintiffs' claim brought under 5 U.S.C. § 5343 (1982) based on *Amell v. United States*, 384 U.S. 158, [86 S.Ct. 1384, 16 L.Ed.2d 445] (1966)." 10

Cl.Ct. at 216 (parallel citations omitted). The Claims Court noted that despite the fact that the statutes in *Amell* and *Best* were different, the operative language in the two statutes is similar, providing that designated federal employees shall have their wages fixed from time to time in accordance with the prevailing rates for similar work. *See* 384 U.S. at 161, 86 S.Ct. at 1386. *Amell* was cited for the proposition that "[i]nterpreting the pay regulation of an executive department 'is typically within the province and expertise of the Court of Claims.'" 10 Cl.Ct. at 216 (quoting 384 U.S. at 163, 86 S.Ct. at 1387). Actually, the Supreme Court in *Amell* did not hold that a statute gearing the pay rate of federal seafaring employees to the prevailing wage scale of private shipping operators mandated the payment of money. The Government had contended in *Amell* for the purposes of wage claims that plaintiffs must be classified as seamen, not federal workers. If the wage claims were deemed cognizable under the Suits in Admiralty Act, plaintiffs would have been foreclosed from suing in the Court of Claims under the Tucker Act. The latter afforded a more liberal limitations period. In this context the Supreme Court ruled that the Court of Claims had jurisdiction over such wage claims by federal employees. It was left to the Court of Claims to explore whether the particular statutes provided plaintiffs with a mandate that money be paid to them.

■ At argument defendant took the position that *Best* was wrongly decided. To resolve the case at bar it is only necessary to rule that *Best* cannot help AAFES employees. Defendant is correct that Congress has restricted the right of such employees to sue the United States whatever the nature of their claims. Only contract employees of the AAFES may invoke the jurisdiction of the Claims Court. The Court of Claims in *Adanes v. United States*, 221 Ct.Cl. 959, 618 F.2d 124 (1979), held that "insofar as NAF [non-appropriated fund] activities are concerned, we have jurisdiction only on claims based on express or implied contracts." 221 Ct.Cl. at 960, 618 F.2d 124 (citations omitted). Although plaintiffs in *Adanes*, as those in the case at bar, pleaded jurisdiction under 5 U.S.C. § 5341 (1976), the Court of Claims also refused to interpret the statute as expressly commanding the payment of money or to "provide in any way for entitlement to money damages." *Id.* *Adanes* is binding precedent on the Claims Court. *South Corp. v. United States*, 690 F.2d 1368 (Fed. Cir.1982).

### 2. Preclusion from suit due to collective bargaining agreement

In the instant case plaintiffs are truck drivers employed by and working at the AAFES. A collective bargaining agreement became effective on April 19, 1982, between the AAFES and the General Truck Drivers, Chauffeurs, Warehousemen and Helpers Local Union No. 957. Article I, § 1.1 of the agreement states that the union is the "sole and exclusive bargaining representative for ... all regular fulltime ... hourly paid employees including truck drivers employed by the [AAFES]...." The agreement expired by its terms on April 19, 1985. Article III of the agreement is entitled: "MATTERS APPROPRIATE FOR CONSULTATION AND NEGOTIATION." Section 3.1 states that these may include "all Personnel policies, practices, programs, procedures related to working conditions and/or other matters affecting general working conditions...." Wage surveys are mentioned in Article XIX, § 19.8: "Wage surveys will be conducted in accordance with current regulations...."

Citing *Carter v. Gibbs*, 909 F.2d 1452 (Fed.Cir.1990) (en banc), *cert. denied,* — U.S. ——, 111 S.Ct. 46, — L.Ed.2d — (1990), defendant argues that plaintiffs may not file suit in any court because their union's collective bargaining agreement with the AAFES provides an exclusive forum for all grievances involving pay claims. In *Carter* employees (revenue officers and tax auditors) of the Internal Revenue Service (the "IRS") brought suit against the United States and others claiming back pay and/or additional pay for overtime. The Federal Circuit, sitting en

banc, declined to reach the merits of plaintiffs' complaint. *Carter*, 909 F.2d at 1458. The appeals court ruled that the Civil Service Reform Act of 1978 (the "CSRA") precluded plaintiffs from pursuing their grievance other than through grievance procedures of their union's collective bargaining agreement. *Id.* at 1455 (citing *Karahalios v. Nat'l Fed'n of Fed. Employees, Local 1263*, 489 U.S. 527, 535–36, 109 S.Ct. 1282, 1288, 103 L.Ed.2d 539 (1989), and *Harris v. United States*, 841 F.2d 1097, 1099 (Fed.Cir.1988)).

■ Under *Carter* three questions govern in the preclusion analysis: 1) Are the concerned employees covered by a collective bargaining agreement; 2) if so, does their dispute constitute a grievance; and 3) does the agreement exclude such disputes from its coverage? If the employees are covered by a collective bargaining agreement, their dispute constitutes a grievance, and the agreement does not exclude such disputes from the grievance procedures, then there is no judicial redress possible. The parties' supplemental briefs reveal disputed issues of material fact as to the first two queries. The parties agree that the collective bargaining agreement has expired, but disagree as to whether plaintiffs' claims nonetheless are subject to its grievance provisions. Whether the matter is grievable is also disputed.

### 3. *Transfer*

■ Plaintiffs have requested that the case be transferred to the United States District Court for the District of Columbia in the event jurisdiction does not lie in the Claims Court. That forum has assumed jurisdiction over claims of non-appropriated fund employees. Defendant rejoins that the CSRA precludes a transfer because under *Carter* the district court would lack jurisdiction over plaintiffs' claims. 28 U.S.C. § 1631 permits a transfer of an action "if it is in the interest of justice" to any other court in which the action could have been brought at the time it was filed. Defendant's argument that *Carter* controls cannot be resolved on summary judgment. Since the issues involving the coverage of the collective bargaining agreement call for inquiry into the agency practices with respect to wage claims, the factual inquiry will encompass the merits. Therefore, a court with jurisdiction to address the merits should conduct this inquiry. The interest of justice is served by not requiring plaintiffs to participate in this factual inquiry before the Claims Court, because no court would be able to make any use of the record if the Claims Court, otherwise lacking jurisdiction, were to decide that plaintiffs' claims are not subject to the expired collective bargaining agreement or that the claims are not grievable. *See Morton–Thiokol, Inc. v. United States*, 4 Cl.Ct. 625, 628 (1984) (lacking jurisdiction, transferor court's determination that the Government took plaintiff's property not entitled to collateral estoppel effect).

### CONCLUSION

Based on the foregoing, defendant's motion is granted insofar as the Claims Court lacks jurisdiction under the Tucker Act. Plaintiffs' motion to transfer is granted. Accordingly, the Clerk of the Court shall transfer this case to the United States District Court for the District of Columbia.

IT IS SO ORDERED.

No costs.