**James D. ADAMS, et al., Plaintiffs,**

v.

**The UNITED STATES, Defendant,**

**and**

**Edward D. Archer, et al., Intervenors.**

**No. 515–84C.**

United States Claims Court.

Feb. 21, 1986.

Gary I. Silverman, Bethesda, Md., for plaintiffs. Robert Joel Zakroff and Zakroff and Associates, Bethesda, Md., of counsel.

George M. Beasley, III, Washington, D.C., with whom was Asst. Atty. Gen. Richard K. Willard, and William G. Colbert, Washington, D.C., for defendant.

John C. Morrison, Alexandria, Va., for intervenors.

## OPINION

MAYER, Judge.

Plaintiffs and intervenors, employees of the Bureau of Engraving and Printing (Bu-

old rulings, *see supra* note 2, may command a   legislative resolution.

reau), seek an order of remand to the Department of the Treasury for a redetermination of their wage increase for fiscal year 1983. They anticipated an 8.6 percent pay increase, mirroring the private sector, rather than the administratively imposed 4 percent pay increase. The Treasury decision to limit pay increases to 4 percent paralleled anti-inflation legislation for that year applicable to other federal employees. The case is here on cross-motions for summary judgment. The court concurs in the parties' agreement that no material facts are in dispute and disposition by summary judgment is appropriate.

## Background

The plaintiff electrolytic platemakers and intervenor engravers in this case are among those "employees in the Bureau of Engraving and Printing whose duties are to perform or to direct manual or machine operations requiring special skill or experience, or to perform or direct the counting, examining, sorting, or other verification of the product of manual or machine operations...." 5 U.S.C. § 5102(c)(7). They are paid a wage "fixed and adjusted from time to time as nearly as is consistent with the public interest in accordance with prevailing rates and in accordance with such provisions of this subchapter ... as the pay-fixing authority ... may determine...." *Id.* § 5349(a).

In years past, the Treasury Department used a tandem pay relationship with similar craft positions of the Government Printing Office (GPO) in setting the wages for comparable positions at the Bureau. When the duties of GPO and certain Bureau positions, including those at issue here, became too divergent for comparison in 1982, Treasury set a new tandem relationship between positions at the American Bank Note Company in New York with duties comparable to those at the Bureau in determining appropriate wages. For some job classifications, Treasury also paid a premium to reflect greater responsibilities than for comparable American Bank Note positions. Where there were no comparable American Bank Note positions, Treasury made independent wage calculations.

In 1982, Congress passed the Continuing Appropriations Act of 1983, Pub.L. No. 97–276, § 109, 96 Stat. 1186, 1191, (set out as a note to 5 U.S.C. § 5343), which limited wage increases of federal "white collar" and certain prevailing rate employees to 4 percent as a means of controlling inflation. Though they are prevailing rate employees, plaintiffs and intervenors were not covered by this act. Nevertheless, the Office of Personnel Management (OPM) issued a memorandum stating it would be in the public interest to extend the concept of Pub.L. No. 97–276, § 109, "to cover the greatest number of Federal employees" where department and agency heads had discretion to set wage increases. An assistant secretary then ordered the Director of the Bureau to follow the OPM wage guidelines for Bureau employees in fiscal year 1983.

Plaintiffs unsuccessfully sought relief from this action from the Comptroller General, Comp.Gen. No. B–211956 (Oct. 21, 1983), before filing this suit. Intervenors filed suit in district court which transferred their case, No. 166–85C, here. They see the Treasury action as circumventing the intent of Congress and an abuse of discretion. They say it ignores the exclusion of Bureau employees from Pub.L. No. 97–276, § 109, and violates 5 U.S.C. § 5349, which requires the Treasury to set a wage that considers both the public interest and the prevailing wage rate, rather than the public interest to the exclusion of the prevailing wage rate. And because the statutory principles of federal pay administration set out in 5 U.S.C. § 5341 were not considered in conjunction with section 5349, the limited wage increase cannot stand.

Defendant says this court has no jurisdiction. Even if it does, Congress has delegated the setting of Bureau wages to the discretion of the executive branch which should not be upset by the judiciary.

## Discussion

### A

Defendant correctly observes that *United States v. Testan*, 424 U.S. 392, 402, 96

S.Ct. 948, 955, 47 L.Ed.2d 114 (1976), says a cause of action does not exist in this court unless the Constitution, a statute, or regulation can "in itself ... fairly be interpreted as mandating compensation by the Federal Government" for the alleged damage sustained. Defendant also correctly observes that *Testan* has been held to bar cases similar to this one. *See, e.g., McGee v. United States*, 5 Cl.Ct. 480 (1984); *Uraga v. United States*, 4 Cl.Ct. 106 (1983); *Adair v. United States*, 648 F.2d 1318, 227 Ct.Cl. 345 (1981); *Doe v. United States*, 650 F.2d 287, 224 Ct.Cl. 632 (1980). Therefore, it argues, because plaintiffs and intervenors here never acquired a statutory entitlement to the higher pay rates claimed, and were actually paid at the rates Treasury set in the exercise of its discretion, there is no "money mandating" statute upon which to found a Tucker Act suit.

■ The difficulty with this argument is that on the authority of *Amell v. United States*, 384 U.S. 158, 86 S.Ct. 1384, 16 L.Ed.2d 445 (1966), the Court of Claims, the precedent from which is binding here, held that there is jurisdiction to consider a suit under section 5349. *Baratt v. United States*, 585 F.2d 1041, 1045, 218 Ct.Cl. 242 (1978). To defendant's suggestion that the *Testan* jurisdictional issue was not considered in *Baratt*, it is fair to respond that *Testan* was at least considered in another context, 585 F.2d at 1045, so it cannot be said the court was unaware of the case. In the face of this unequivocal post-*Testan* precedent, the court is not free to adopt defendant's otherwise persuasive argument. There is jurisdiction to entertain this suit.

■ The court is asked to weigh Treasury's decision to impose a 4 percent pay increase cap on Bureau employees, reflecting section 5349 concern for the "public interest," against the 8.6 percent wage increase given American Bank Note employees, the "prevailing rate" aspect of section 5349, and determine if the decision was lawful. The scope of the court's review of discretionary executive decisions is strictly limited. Laws like section 5349 "embod[y]

a broad congressional grant of administrative discretion with concomitant limited scope of judicial review." *Benevento v. United States*, 461 F.2d 1316, 1320, 198 Ct.Cl. 772 (1972); *Daniels v. United States*, 407 F.2d 1345, 1347, 187 Ct.Cl. 38 (1969). Before the court may intercede, it must be clearly shown that the government's pay practices are "so arbitrary and capricious as to constitute an abuse of discretion," *National Maritime Union v. United States*, 682 F.2d 944, 955, 231 Ct.Cl. 59 (1982); *Daigle v. United States*, 217 Ct.Cl. 376, 386 (1978), that the action is "clearly wrong." *Baratt v. United States*, 585 F.2d at 1045; *Benevento v. United States*, 461 F.2d at 1320. Otherwise it would be impermissibly substituting its judgment for that of the officials statutorily charged with exercising the authority. *See National Maritime Union*, 682 F.2d at 954.

**B**

Plaintiffs say section 5349 reflects a special congressional concern for their fiscal protection. They argue that the congressional policy of section 5349 "is grounded on the theory that the wages of federal blue collar employees be in conformity with employees doing similar work in both the public and private sectors." What they ignore, however, is that in October 1982, Congress limited their blue collar colleagues to a 4 percent wage increase regardless of the increases prevailing in the private sector. Pub.L. No. 97–276, § 109. This manifests congressional concern to control inflation in the public interest notwithstanding private sector pay. If anything, the Treasury directive furthers the congressional scheme rather than frustrates it. That the pay raise cap was not applied to plaintiffs in the appropriations act does not indicate congressional intent that no restraint apply. The more plausible and persuasive significance of the omission is that Congress deferred the decision to Treasury, the entity to which it had delegated the authority to set pay by section 5349.

Plaintiffs apparently expect wages paid to Bureau employees to conform to wages paid American Bank Note employees, but their position fails to take the public interest component of section 5349 into account. "The language 'as nearly as is consistent with' anticipates that equality of pay may *not* always be entirely consistent with the public interest. These countervailing considerations create a kind of tension in the statute which is crucial to the system, as it provides the administrative discretion needed to operate efficiently a wage system." *National Maritime Union*, 682 F.2d at 949. The public interest exception provides the administrative discretion and "flexibility needed to eliminate anomalies and inequities that might arise from a too literal conformity to industry pay practices." *Blaha v. United States*, 511 F.2d 1165, 1170, 206 Ct.Cl. 183 (1975). It is not for the judiciary to second guess the executive decision to weigh the public interest in combating inflation more heavily than achieving pay parity between plaintiffs and the private sector.

### C

Plaintiffs claim Treasury gave no consideration to the prevailing rates in the private sector as required by section 5349. Instead, it deferred completely to the OPM guidelines which referred only to the first of four federal pay principles set out in 5 U.S.C. § 5341.* They contend that Treasury must apply all four principles of section 5341 to the "private sector versus public interest" balancing test of section 5349. Indeed, because Treasury did not compare the duties of Bureau employees to those of other federal employees, defendant cannot even claim it followed the "equal pay for

substantially equal work" principle of section 5341(1).

The parties disagree over whether section 5341 applies to section 5349 at all. But a careful reading shows that it does not. Bureau wage setting is exempted from section 5341 by section 5342(b)(2) which states:

> This subchapter [which includes section 5341] does not apply to employees and positions described by section 5102(c) of this title other than by—
>
> (A) paragraph (7) of that section to the extent that such paragraph (7) applies to employees and positions *other than employees and positions of the Bureau of Engraving and Printing* .... [Emphasis added.]

In other, less convoluted, words, Bureau employees like plaintiffs described by section 5102(c)(7) and covered by section 5349(a) are excluded from the coverage of section 5341. Furthermore, section 5342(a)(1)(I) expressly excludes the Bureau of Engraving and Printing from the subchapter except for purposes of section 5349, at issue here.

Nevertheless, plaintiffs cite *Baratt* and *National Maritime Union* for the proposition that the congressional policy codified in section 5341 must govern any interpretation or application of section 5349. This is unsound. *Baratt* merely rejected the contention that the Treasury Department violated "the essential principles of federal pay administration, as set forth in" section 5341 and other provisions. 585 F.2d at 1047. It did not expressly apply that section to Treasury's actions under section 5349, and the court will not infer that it intended to in the face of sections

---

* Section 5341 says,

It is the policy of Congress that rates of pay of prevailing rate employees be fixed and adjusted from time to time as nearly as is consistent with the public interest in accordance with prevailing rates and be based on principles that—

   (1) there will be equal pay for substantially equal work for all prevailing rate employees who are working under similar conditions of employment in all agencies within the same local wage area;

   (2) there will be relative differences in pay within a local wage area when there are substantial or recognizable differences in duties, responsibilities, and qualification requirements among positions;

   (3) the level of rates of pay will be maintained in line with prevailing levels for comparable work within a local wage area; and

   (4) the level of rates of pay will be maintained so as to attract and retain qualified prevailing rate employees.

5342(a)(1)(I) and (b)(2)(A) which say it is inapplicable.

Although *National Maritime Union* did apply section 5341 to section 5348, a statute much like section 5349, section 5348 covers a different category of employees, federal mariners. Pay practices for government seafarers historically have been distinct from those covering other prevailing rate employees. *See* 682 F.2d at 951. And while the court thought section 5341 applied to the whole subchapter, *id.* at 948, we have explicit provisions that say otherwise. 5 U.S.C. §§ 5342(a)(1)(I) and (b)(2)(A). Because an error may have been made in construing one law is no reason to extend that error to a different one. The concept of precedent is not so inflexible.

Even so, *National Maritime Union* cuts against plaintiffs' argument. It held that notwithstanding the applicability of the four factors set out in section 5341, the "public interest" consideration of section 5348(a) prevailed over all of them. It had priority over the section 5348(a) "prevailing rate" provision as well. 682 F.2d at 952. This holding informs the decision here.

Only section 5349 wage guidelines control here. Therefore, within its congressionally delegated discretion Treasury is free to borrow whatever additional guidance it sees fit in weighing the two competing principles in section 5349. Merely adverting to section 5341(1) does not bind it to the rest of the recitation in that statute. Treasury may rely on whatever is relevant in fulfilling its section 5349 obligations without risking a finding that it is bound by provisions that do not otherwise apply. In fact, section 5349(a) itself permits consideration of "such provisions of this subchapter ... as [Treasury] may determine." Striving for uniform restraint of wage increases among as many government employees as possible is not inconsistent with the principle of "equal pay for substantially equal work."

Plaintiffs and intervenors appear to challenge the Treasury decision on the additional ground that no discretion was in fact exercised; neither the prevailing rate of other government employees' pay nor the tandem pay relationship with American Bank Note were considered. Citing *Blaha v. United States*, 511 F.2d 1165, 206 Ct.Cl. 183, intervenors also suggest that because GPO was not affected by the pay increase cap neither should they, although they do not claim a tandem pay relationship with GPO positions.

Wages and duties of electrolytic platemakers and engravers were compared with those of similar positions at GPO until those were phased out and no similar positions in government were available for comparison. In 1982, pay for American Bank Note positions based on a collective bargaining agreement were selected for comparison. Treasury exercised further discretion by adding a 5 percent base wage differential because of additional responsibilities that do not exist at American Bank Note.

Similarly, plaintiffs and intervenors misapprehend *Blaha*. There, the Court of Claims held that in the absence of any justification the pay of two groups of executive department employees, covered by the same pay setting statute, and performing like duties, must be consistent. 511 F.2d at 1171. In our case, different statutes govern the pay of each group of employees, and their duties are dissimilar. Furthermore, as defendant says, "GPO is not an Executive branch agency subject to the directive of the President or the Office of Personnel Management on this matter." *Blaha* is not helpful here.

■ In our case, there is no issue of changing duties, equipment, or responsibilities that might require comparability determinations. Only the cost of living adjustment is challenged. In exercising its discretion, Treasury merely chose to defer to the public interest in controlling inflation rather than adopt the increase prevailing in the comparable private market. Treasury's decision was a permissible application of its congressionally delegated authority which required no wage surveys, comparisons, or talismanic language to be effective. To the extent *National Federa-*

*tion of Federal Employees v. Brown,* 645 F.2d 1017 (D.C.Cir.1981), on which plaintiffs and intervenors rely, suggests otherwise, the court declines to follow. *Cf. National Maritime Union,* 682 F.2d at 950, 954.

### Conclusion

Accordingly, defendant's motion for summary judgment is GRANTED and plaintiffs' cross-motion is DENIED. The Clerk will dismiss the complaint with costs to the prevailing party.

It is so ORDERED.

