DAVIS, Circuit Judge.
 

 Appellants, who are all employees of the Bureau of Engraving and Printing (BEP) of the Treasury Department (Treasury), appeal a decision of the United States Claims Court (Mayer, J.) refusing, on cross-motions for summary judgment, to require the employing agency to disregard the limitation of a 4% pay increase (for fiscal year 1983) imposed by Treasury on its employees.
 
 Adams v. United States,
 
 9 Cl.Ct. 546 (1986). We affirm.
 

 I.
 

 As the Claims Court determined—and the parties do not controvert—the material facts are not disputed. Appellants are electrolytic platemakers and engravers of the BEP “whose duties are to perform or to direct manual or machine operations requiring special skill or experience, or to perform or direct the counting, examining, sorting, or other verification of the product of manual or machine operations.” 5
 
 *1143
 
 U.S.C. § 5102(c)(7). They are paid a wage “fixed and adjusted from time to time as nearly as is consistent with the public interest in accordance with prevailing rates and in accordance with such provisions of this subchapter, [“Prevailing Rate Systems”] ... as the pay-fixing authority of each such agency [specified in the section, including the Bureau of Engraving and Printing by name] may determine.” 5 U.S.C. § 5349(a).
 

 After using for some time the pay scale of the Government Printing Office to set wages for comparable positions at BEP, Treasury (in 1982) established a new tandem relationship with the wages paid by the American Bank Note Company for comparable positions at BEP. Where responsibilities of comparable BEP positions were greater than those at the Company, a premium was paid to the BEP employees. Where there were no comparable Company positions, Treasury made independent wage calculations.
 

 In 1982, the Continuing Appropriations Act of 1983, Pub.L. No. 97-276, § 109, 96 Stat. 1186, 1191, became law. That legislation limited wage increases of federal “white collar” and certain prevailing rate employees to 4% (as a means for controlling inflation). Appellants were not covered by this statutory provision. However, the Office of Personnel Management (OPM) issued a memorandum stating that it would be in the public interest to extend the 4% limitation of Pub.L. 97-276 “to cover the greatest number of Federal employees” where department and agency heads had discretion to set wage increases. Thereupon the relevant Treasury assistant secretary ordered the director of BEP to follow the OPM guideline for BEP employees in fiscal year 1983.
 

 Some of the appellants then brought this suit in the Claims Court. Others sued in a District Court which transferred their case to the Claims Court. Both actions were decided by the Claims Court in the same opinion and judgment—now before us.
 

 II.
 

 Though Judge Mayer rejected the Government’s point that the Claims Court had no jurisdiction over this suit, the United States still presses it. We reach the same conclusion as did the Claims Court. The core of the Government’s position is that the general legislation dealing with the pay of these BEP employees is so broad and endows Treasury with so much discretion that there is no specific wage or pay provision mandated by statute other than the rate and pay actually set by Treasury for these employees for 1983. The conclusive answer for this case is that a Supreme Court ruling and Court of Claims decisions (which are binding on us) mandate that the Claims Court has jurisdiction.
 
 Amell v. United States,
 
 384 U.S. 158, 86 S.Ct. 1384, 16 L.Ed.2d 445 (1966), expressly held that the Court of Claims had jurisdiction over wage claims by prevailing-wage employees quite comparable to those now suing. The Government notes that
 
 Amell
 
 pre-dated
 
 United States v. Testan,
 
 424 U.S. 392, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976)—on which the Government relies heavily—but
 
 Amell
 
 remains a Supreme Court decision, which has not been modified, questioned by the Court, or overruled, and we are not at liberty to hold that it is no longer good law.
 
 Cf. United States v. Mason,
 
 412 U.S. 391, 93 S.Ct. 2202, 37 L.Ed.2d 22 (1973). Moreover, the Court of Claims, after
 
 Testan,
 
 specifically held (invoking
 
 Amell)
 
 that it possessed jurisdiction over wage claims by “prevailing wage” employees of BEP itself.
 
 Baratt v. United States,
 
 585 F.2d 1041, 1044-45 (Ct.Cl.1978).
 
 See also National Maritime Union v. United States,
 
 218 Ct.Cl. 242, 682 F.2d 944 (1982) and
 
 Daigle v. United States,
 
 217 Ct.Cl. 376 (1978), both involving “prevailing wage” federal employees. This course of decision calls upqn us to sustain the Claims Court’s jurisdiction over appellants’ suit.
 

 III.
 

 On the merits, we also agree with the Claims Court. “Prevailing rates” wage legislation like § 5349,
 
 supra
 
 —with its express reference to adjustment “from time to time as nearly as is consistent with the
 
 *1144
 
 public interest”—bestows “a broad congressional grant of administrative discretion.”
 
 Benevento v. United States,
 
 198 Ct.Cl. 772, 461 F.2d 1316, 1320 (1972). The administrative determination can only be set aside for abuse of discretion,
 
 (National Maritime Union v. United States, supra,
 
 682 F.2d at 955) or because it is “so arbitrary as to be clearly wrong.”
 
 Baratt v. United States, supra,
 
 585 F.2d at 1045.
 

 Here, Treasury and BEP did not abuse their discretion when they imposed on appellants the 4% “cap” that Congress had imposed on other federal employees, including some “prevailing wage” federal workers. In the parallel decision in
 
 National Maritime Union,
 
 the court first held that the “public interest” clause in the statute prescribes countervailing considerations to the “prevailing rates” clause, and then ruled precisely that it was not an abuse of discretion for an agency whose employees were not directly covered by the then statutory pay “cap” to utilize the same “cap,” which had generally been determined (as here) to be executive policy, for its own “prevailing wage” employees. 682 F.2d at 949, 954-55. The same is true in the current instance unless there are good reasons to hold
 
 National Maritime Union
 
 inapplicable.
 

 Appellants proffer, as a reason for reaching a different result than in
 
 National Maritime Union,
 
 that BEP did not actually weigh the needs of the “public interest,” as against the “prevailing rates.” But Treasury had the decisive role in determining wages,
 
 [1]
 
 and the undisputed fact is that Treasury deliberately decided to apply the overall 4% limit to BEP. The assistant secretary’s memorandum of January 25, 1983 makes it absolutely clear that she weighed the pros and cons, and expressly elected in “difficult economic times” to follow the President’s general policy, to ensure Departmental consistency, and to “share an equal burden” with other federal employees as well as the country. This was a sufficient balancing of the two statutory elements.
 

 In the same connection, the BEP employees assert that the four paragraphs of § 5341 (establishing general policy for setting wages of “prevailing rate” employees) apply to the setting of their wages— but were not weighed by their employer. However, the Claims Court correctly determined that § 5341 does not apply to the wages of BEP employees.
 
 See Adams v. United States, supra,
 
 9 Cl.Ct. at 549-50. Section 5342(b)(2)(A) of Title 5 specifically excludes “employees and positions of the Bureau of Engraving and Printing” from coverage by § 5341.
 
 [2]
 
 Whatever may be true of the different employees and agency involved in
 
 National Maritime Union, supra,
 
 the employees here cannot avail themselves of the statutory policy embodied in § 5341. Treasury committed no error, therefore, when it failed to spell out its consideration of the four separate factors of § 5341.
 

 Appellants then invoke a Treasury Personnel Management Manual, which incorporates the four factors of § 5341, as applying to them even though the statutory provision may not itself apply. The answer is twofold. First, the Manual itself (following the statute) excludes BEP employees from application of the four Manual factors taken from § 5341, as well as from the other provisions governing the setting of
 
 *1145
 
 wage schedules. Second, this particular contention was not raised below and need not be considered by this court.
 

 There being no abuse of discretion by Treasury, the judgment of the Claims Court is
 

 AFFIRMED.
 

 [1]
 

 . In fact, the Director of BEP wished to eliminate the 4% "cap,” but was overruled by Treasury. This was appropriate because Treasury was the employing agency under § 5349. Even if BEP were the formal employer, Treasury could intervene as it did:
 

 [W]hen purely executive functions of a discretionary nature are imposed on a subordinate official of the Government it is an implied condition that his actions (before they have become final) are subject to the review and supervision of his superiors—if the superior is authorized to intervene in that particular field and does so in time.
 

 Congress Construction Corp. v. United States,
 
 314 F.2d 527, 530 (Ct.Cl.),
 
 cert. denied,
 
 375 U.S. 817, 84 S.Ct. 53, 11 L.Ed.2d 52 (1963).
 

 [2]
 

 . Moreover, § 5342(a)(l)(I) excludes the Bureau of Engraving and Printing from the whole sub-chapter ["Prevailing Rate Systems”] except for § 5349,
 
 supra,
 
 which expressly includes the Bureau.