**Daniel BRADLEY, et al.,**
**Plaintiffs–Appellants,**

v.

**The UNITED STATES,**
**Defendant–Appellee.**

No. 88–1435.

United States Court of Appeals,
Federal Circuit.

March 29, 1989.

Lawrence J. Sherman, Washington, D.C., argued for plaintiffs-appellants. With him on the brief was William B. Peer, of Barr, Peer & Cohen, Washington, D.C.

Eric L. Miller, of the Commercial Litigation Branch, Dept. of Justice, Washington, D.C., argued for defendant-appellee. With him on the brief were John R. Bolton, Asst. Atty. Gen., David M. Cohen, Director, Robert A. Reutershan, Asst. Director, and John E. Kosloske. Of counsel was William G. Colbert, of the Bureau of Engraving and Printing, Dept. of the Treasury.

Before NIES and ARCHER, Circuit Judges, and COWEN, Senior Circuit Judge.

NIES, Circuit Judge.

Appellants are journeymen plate printers, currently or formerly employed by the Bureau of Engraving and Printing (BEP) of the Department of the Treasury (DOT), and their local union (collectively, hereinafter, "printers"). Asserting entitlement under 5 U.S.C. § 5349 (1982) to back pay, they filed suit in the United States Claims Court seeking a retroactive award to April 1, 1983, or, at least, to various more recent dates. The government denied liability on the ground that its decision delaying a wage adjustment was not an abuse of its pay-fixing authority. The Claims Court noted the four-year duration of the government's ongoing decision-making process

and cautioned that a pay-fixing authority does not have discretion to delay a wage adjustment decision indefinitely. Nevertheless, the court held it "premature" to call the government's delay unreasonable, granted the government's motion for summary judgment, and dismissed the case. *Bradley v. United States*, 14 Cl.Ct. 741 (1988). This appeal followed.

We vacate the judgment of dismissal and remand.

I

BACKGROUND

The wages paid to BEP printers are subject to 5 U.S.C. § 5349, which provides in pertinent part:

The pay of [BEP] employees ... shall be fixed and adjusted from time to time as nearly as is consistent with the public interest in accordance with prevailing rates and ... as the pay-fixing authority of [the BEP] may determine.

The DOT's personnel manual provides for the pay of BEP printers to be based on job-to-job comparisons with comparable jobs at the American Bank Note Company (ABNC) in New York City. *See* Treasury Personnel Manual, ch. 532 at 2 (1969) (para. 2d); Treasury Personnel Management Manual, ch. 532 at IV-2 (1984) (para. 3b).[1]

In 1970, the DOT established a two-rate wage structure for the BEP printers which is still in effect. The ABNC entered a collective bargaining agreement which increased wage rates on April 1, 1983 (the earliest date which the printers assert for purposes of retroactive back pay). In June of 1984, convinced that BEP printers were paid at a wage rate far below that received by private employees at ABNC, representatives of the local union requested that the BEP perform a study comparing wage rates paid printers at the BEP and at the ABNC. That study was completed in April

---

1. The Treasury Personnel Management Manual provides:

Employees in the Bureau of Engraving and Printing performing and supervising work as Designer, Engraver, Plate Finisher, Plate

Printer, Plate Hardener, Plate Maker, Sculptural Engraver, and Siderographer will be paid rates based on job-to-job comparison with comparable jobs in the American Bank Note Company, New York, N.Y.

of 1985 and recommended upward revisions to the BEP pay structure.

After reviewing the study, the Director of the BEP decided against a wage increase on "public interest" grounds. The Director also proposed making a second, more detailed study which would consider the total *compensation packages* (not merely wage rates) at both the BEP and the ABNC. After the Assistant Secretary of the Treasury for Management agreed with the Director's proposal, a second study was authorized with mid–1988 estimated as the completion date for a final report.

Shortly after the Claims Court issued its judgment dismissing the case on May 3, 1988, a draft report providing the results of the second study became available. The printers filed a motion to vacate or amend the judgment based upon that report. In an order of May 24, 1988, the Claims Court denied that motion, reasoning that the report was only a draft, that it was not a final decision by the pay-fixing authority, and that it suggested the printers' wages were under active consideration. The government still has not rendered a final determination at this time.

## II

### OPINION

■ This court has recently reviewed the statute at issue, 5 U.S.C. § 5349, and stated:

> "Prevailing rates" wage legislation like § 5349, *supra*—with its express reference to adjustment "from time to time as nearly as is consistent with the public interest"—bestows "a broad congressional grant of administrative discretion." The administrative determination can only be set aside for abuse of discretion, or because it is "so arbitrary as to be clearly wrong."

*Adams v. United States*, 810 F.2d 1142, 1143–44 (Fed.Cir.1987) (citations omitted); *see also National Maritime Union v. United States*, 682 F.2d 944, 946, 231 Ct.Cl. 59 (1982) (phrase "as nearly as is consistent with the public interest" gives agency discretion to override general purpose of prevailing rate statute: to provide parity of pay between public and private sectors). Accordingly, the BEP has broad discretion in deciding whether to adjust rates.

Nevertheless, as stated in *National Maritime*, 682 F.2d at 954: "There are limits, of course, to the discretion inherent in [the prevailing pay rate statute]...." *See also Adams*, 810 F.2d at 1143 (rejecting argument that section 5349 "endows Treasury with so much discretion that there is no specific wage or pay provision mandated by statute"). Inasmuch as discretion is not unlimited, the statute must be deemed to be a pay-mandating statute. Thus, there is a jurisdictional basis for a back pay claim in the Claims Court.

### A

■ The printers contend that the government's failure to adjust wage rates, despite the 1985 study which concluded that the rates are misaligned, constitutes "manifest error," and, thus, constitutes an abuse of the pay-fixing authority's statutory discretion. They argue that the statute expressly requires the government to assure the continued viability of a specific wage rate methodology—tandem pay rates. They further argue that the first study provided all the information necessary to adjust rates, per the printers, and, consequently, the government lacks authority to postpone remedial action pending another study. The printers' argument is, in short, that the government was required to act immediately after completion of the first study and lacked discretion to conduct a second study, thereby delaying its wage rate determination.

Thus, the first question raised is whether the first study's report mandated a wage rate adjustment. The Claims Court held that the government "did not abuse its discretion by deciding to undertake a second wage comparability study before making a final wage determination." *Bradley*, 14 Cl.Ct. at 745. Although the question presented is close, we are constrained to agree.

Neither the statute, section 5349, which mandates pay "in accordance with prevailing rates," nor the Treasury directives,

which assure "rates based on job-to-job comparison with comparable jobs in the American Bank Note Company," require the BEP to use a specific methodology such as "tandem pay" when establishing wage rates.[2] Although the BEP has used that methodology since 1970, the Director noted significant changes in equipment and other factors since then. Accordingly, he felt a review of overall comparablity, not just wage rates, was warranted. We find nothing in section 5349 or the Treasury directives which precludes such a review.

Section 5349 delegates to the pay-fixing authority of the BEP the power to fix and adjust the pay of BEP employees. Moreover, chapter 532 of the Treasury Personnel Management Manual delegates to the Director of the BEP the authority to implement wage rates approved by the DOT and to recommend changes in such rates. Pursuant to that power and authority, the BEP Director reviewed the first study and opined that it failed to address a number of issues which were relevant and necessary to informed examination of the overall comparability of the BEP and ABNC wage rate structures. Specifically, he recommended review of the total compensation packages at both the BEP and the ABNC, the level of equipment staffing, and the effect of different equipment on work requirements. Thus, in view of the presumption of correctness accorded administrative decision-making, we cannot agree with the printers' contention that the first study provided all the information necessary to adjust rates.

Even if the statute and directives required a tandem pay methodology when fixing wage rates, and the first study provided all the information necessary to fix such rates, the statutory provision with respect to parity of pay between the public and private sectors is subject to broad administrative discretion. *See National Maritime*, 682 F.2d at 953–54. The Director at the BEP declined to adopt the first study's recommendation that wage rates be adjusted, reasoning that such adjustment would be contrary to the public interest as reflected in the Administration's policy of combating inflation. A court is not empowered to second-guess the executive's judgment on such a question. *Id.* at 954. Moreover, "such a policy [of combating inflation] is rational and reasonable ... and is not arbitrary or capricious." *Id.*

Accordingly, to the extent that the printers' claim is based only on the government's decision not to realign wage rates after completion of the first study, it must fail. The government did not abuse its discretion by deciding to undertake a second wage comparability study before making a final wage rate determination.

### B

■ Although we have concluded that section 5349 did not require the government to act immediately upon receipt of the first report, the question remains whether the government's delay to date constitutes an abuse of discretion. The printers argue that the delay here is excessive. The Claims Court agreed that four years is a long time and that the printers deserve to have the issue resolved. *Bradley*, 14 Cl.Ct. at 745. Moreover, the court stated:

> The pay fixing authority does not have discretion to delay a wage adjustment decision indefinitely. Failure by [the government] to issue its final report and to make a wage decision would certainly suggest that the [government] has engaged in arbitrary and capricious delay tactics.

*Id.* at 745 n. 3. Nevertheless, the court termed it "premature" to call the delay "unreasonable," *id.* at 745, granted the government's motion for summary judgment, and dismissed the complaint in its entirety.

We conclude, contrary to the Claims Court, that this matter cannot properly be decided by summary judgment on the present record. Four years may not be "too long," but only if there are extenuat-

**2.** To the extent that the legislative history is relevant, it supports the view that section 5349 does not limit the BEP to a tandem pay rate methodology. When commenting favorably upon the bill which included section 5349, Senator McGee stated: "The guidelines [established for the statutory pay system] are not extensive. They will not bind the hands of the executive branch too firmly." 118 Cong.Rec. 21,017 (1972).

ing circumstances. At least, unresolved factual issues are present here. The delay between March of 1986, when the DOT decided to make a second study, and December of 1987, when the BEP retained a private company to conduct that study, is unexplained. Whether it was justified is a material fact. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986) (unresolved facts that might affect outcome of suit under governing law preclude entry of summary judgment). Accordingly, the grant of summary judgment for the government cannot stand and is vacated.

We are concerned that the government not continue to drag out the resolution of this legitimate dispute. Also, the statute contemplates that the determination of the amount of adjustment be made in the first instance by the government. Thus, we instruct the Claims Court to issue an order requiring the government to complete its study promptly and to determine the amount of and the date for adjustment of wage rates without further delay. If the delay to date cannot be justified, the award must be retroactive to a justifiable date.[3]

### III

### CONCLUSION

In the face of unresolved factual issues, we vacate the Claims Court's dismissal of the complaint upon grant of the government's motion for summary judgment and remand for proceedings consistent with this opinion.

### COSTS

Each party will bear its own costs of this appeal.

**VACATED AND REMANDED.**

---

**3.** We do not decide whether or not the administratively imposed pay cap may limit the amount of any award. We do hold that the comparability adjustment determination must be made before reaching that issue.